IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1036

Filed 2 January 2024

Chatham County, Nos. 19CRS50432-33

STATE OF NORTH CAROLINA

v.

DINO LAMONT THOMPSON

Appeal by Defendant from Judgment rendered 21 March 2022 by Judge Alyson A. Grine in Chatham County Superior Court. Heard in the Court of Appeals 9 August 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Jodi L. Regina, for the State.*
>
> *Christopher J. Heaney for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Dino Lamont Thompson (Defendant) appeals from Judgment rendered 21 March 2022 upon jury verdicts finding him guilty of First-Degree Forcible Rape, First-Degree Kidnapping, Sexual Battery, and Assault of a Female. The Record before us tends to reflect the following:

On 28 October 2019, Defendant was indicted for First-Degree Forcible Rape, First-Degree Kidnapping, and Assault on a Female. On 12 July 2021, the grand jury

issued a superseding indictment for First-Degree Kidnapping, Assault on a Female, and a new count of Sexual Battery. Defendant pleaded not guilty to all charges.

The matter came on for trial on 14 March 2022. The State called Victim to testify. Victim testified to the following:

On 3 April 2019 at approximately 2:00 p.m., Defendant came to Victim's house and offered her crack cocaine. Victim and Defendant both smoked crack cocaine. Defendant then left Victim's home but returned around 8:00 p.m. with more crack cocaine, an unidentified powdered substance, and orange-colored alcohol. Victim tried the unidentified powder, which made her feel "weird" and unlike herself. Victim told Defendant she needed to go take a shower, and attempted to go up the stairs to the second floor of her home when Defendant grabbed her. Victim and Defendant went into Victim's bedroom, where Victim grabbed a screwdriver from the dresser beside her bed for protection. Defendant forced Victim to have vaginal intercourse with him against her will. Defendant repeatedly punched Victim while she was on the bed. Victim attempted to fight back and kick Defendant off of her; eventually, she was able to run into her bathroom and locked the door. Victim found her cellphone in the bathroom and called 911.

During Victim's testimony, defense counsel requested to be heard outside the presence of the jury. Defense counsel took issue with Victim's testimony, describing it as "a streamed sort of consciousness." The State was also heard on the issue and requested to be allowed to ask more leading questions on direct examination. The

State conducted voir dire regarding Victim's mental health issues to allow the trial court to determine whether it would be appropriate for the State to ask more leading questions. These issues were ultimately disclosed to the jury: Victim had been diagnosed with either Bipolar or Borderline Personality Disorder; Victim had been diagnosed with Post-Traumatic Stress Disorder and a substance use or abuse disorder; and Victim had recently relapsed and gotten out of rehab the week before trial. Victim also disclosed that she takes Gabapentin for fibromyalgia, chronic pain, anxiety, agitation, and as a sleep aid and Seroquel for Borderline Personality Disorder.

On the fourth day of trial, the State informed the trial court Victim was observed in possession of alcohol, and the bailiffs believed she had consumed some alcohol earlier that morning. Defense counsel moved for a mistrial. The trial court noted, on the record, outside the presence of the jury, Victim took a portable breathalyzer test with "a 0.0 outcome." The trial court denied Defendant's Motion for a Mistrial. When asked whether Victim had taken any impairing substances that day, Victim disclosed she had "a sip of vodka" because her "nerves are bad." Victim also informed the trial court that she took a breathalyzer test twice, and both results were "0." The trial court reminded Victim she is under subpoena and ordered Victim to remain in the courtroom until the time that she is needed as a witness again. The trial court also ordered Victim "not to consume any substances that are impairing, no alcohol, no controlled substances." The trial court advised Victim a member of the

District Attorney's Office would stay with her while she was not testifying to ensure her compliance. Before Victim was called to testify again, the trial court stated on the record:

> when [Victim] came in this morning, she appeared coherent to the Court. She was responding rationally to the questions posed to her; seemed to be in control of her faculties. And I believe the parties agree that the best use of time is to go ahead and proceed with cross-examination of [Victim].

On recross-examination, defense counsel asked Victim if she had consumed alcohol that morning, to which she replied, "I sure did." Victim disclosed to the jury that she took a shot of alcohol that was in her purse upon arriving to the courthouse. When asked if she consumed alcohol the previous day, Victim initially replied that she did not. The State later informed the trial court that soon after Victim was released from testifying, Victim reported to the State that she consumed "a beer at lunch" the day before. Defense counsel stated, "I think the jury needs to understand and hear that." Victim was called to testify again and corrected her testimony about not consuming alcohol the day before, disclosing to the jury she had a beer at lunch.

On 21 March 2022, the jury returned verdicts finding Defendant guilty of First-Degree Forcible Rape, First-Degree Kidnapping, Sexual Battery, and Assault on a Female. The trial court sentenced Defendant to 110-144 months of imprisonment for First-Degree Kidnapping and Assault on a Female and to 292-411 months of imprisonment for First-Degree Forcible Rape. The trial court arrested judgment on

the Sexual Battery charge. Defendant timely filed written Notice of Appeal on 22 March 2022.

## Appellate Jurisdiction

The trial court rendered Judgment and sentenced Defendant on 21 March 2022. The Record also reflects written Judgments signed by the trial court on 21 March 2022, but these Judgments are neither file-stamped nor certified by the Clerk.[1] Rule 4 of the North Carolina Rules of Appellate Procedure provides that appeal from a judgment *rendered* in a criminal case must be given either orally at trial or by filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment. N.C.R. App. P. 4. Here, the Record reflects the written Judgments were signed by Judge Alyson A. Grine on 21 March 2022, and Defendant's written Notice of Appeal was file-stamped the next day, 22 March 2022. There is no dispute between the parties that Judgments were in fact entered and Defendant's written Notice of Appeal was timely. Therefore, this Court has appellate jurisdiction over this appeal.

## Issue

The dispositive issue on appeal is whether the trial court abused its discretion by not declaring a mistrial.

## Analysis

---

[1] Indeed, as a whole, the Record fails to include any file-stamped documents. We admonish both parties to pay greater attention in compiling the Record on Appeal.

Defendant contends the trial court erred in denying Defendant's Motion for a Mistrial.  We disagree.

"[A] judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case."  N.C. Gen. Stat. § 15A-1061 (2021).  However, "[i]t is within the trial court's discretion to determine whether to grant a mistrial, and the trial court's decision is to be given great deference because the trial court is in the best position to determine whether the degree of influence on the jury was irreparable."  *State v. Hill*, 347 N.C. 275, 297, 493 S.E.2d 264, 276 (1997) (citation omitted).  As such, "[o]ur standard of review when examining a trial court's denial of a motion for mistrial is abuse of discretion."  *State v. Dye*, 207 N.C. App. 473, 482, 700 S.E.2d 135, 140 (2010) (citation and quotation marks omitted).  "An abuse of discretion occurs 'only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision.'"  *State v. Salentine*, 237 N.C. App. 76, 81, 763 S.E.2d 800, 804 (2014) (quoting *State v. Dial*, 122 N.C. App. 298, 308, 470 S.E.2d 84, 91, *disc. review denied*, 343 N.C. 754, 473 S.E.2d 620 (1996)).

In the case *sub judice*, the State informed the trial court—outside the presence of the jury—Victim was observed in possession of alcohol, and the bailiffs believed she had consumed some alcohol earlier that morning.  Defense counsel moved for a mistrial.  The trial court noted, on the record, outside the presence of the jury, Victim

took a portable breathalyzer test and had a "0.0 outcome." The trial court denied Defendant's Motion for a Mistrial and inquired further into the matter as discussed below. Thus, given the trial court's knowledge and consideration of the result of the breathalyzer test, we cannot conclude the trial court abused its discretion in denying Defendant's Motion for a Mistrial.

Defendant also contends the trial court erred in failing to declare a mistrial *sua sponte*. We, again, disagree.

"[U]pon his own motion, a judge may declare a mistrial if . . . [i]t is impossible for the trial to proceed in conformity with law[.]" N.C. Gen. Stat. § 15A-1063(1) (2021). "This statute allows a judge . . . to grant a mistrial where he could reasonably conclude that the trial will not be fair and impartial." *State v. Ramirez*, 156 N.C. App. 249, 253, 576 S.E.2d 714, 718 (2003) (alteration in original) (citation and quotation marks omitted). "It is appropriate for a trial court to declare a mistrial only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Bowman*, 349 N.C. 459, 472, 509 S.E.2d 428, 436 (1998) (citation and quotation marks omitted).

The Record demonstrates the trial court took immediate measures to address Victim's behavior, ordering her to refrain from consuming any impairing substances and to remain in the courtroom until she is needed to testify again. With regard to Victim's behavior Defendant characterizes as "so emotionally sympathetic" and prejudicial, the trial court was in the best position "to investigate any allegations of

misconduct, question witnesses and observe their demeanor[,] and make appropriate findings." *State v. Washington*, 141 N.C. App. 354, 376, 540 S.E.2d 388, 403 (2000) (citation and quotation marks omitted).  In light of the immediate and reasonable steps taken by the trial court to address Victim's behavior, the trial court's decision to: (1) deny Defendant's Motion for a Mistrial; and (2) not declare a mistrial *sua sponte* was the result of a reasoned decision.[2]

Thus, the trial court did not abuse its discretion in not declaring a mistrial. Therefore, Defendant received a fair trial free from error.  Consequently, we affirm the trial court's ruling.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude there was no error at trial.

NO ERROR.

Judges MURPHY and WOOD concur.

---

[2] Defendant also contends defense counsel was ineffective in failing to renew the Motion for a Mistrial. Given our decision the trial court did not abuse its discretion, we need not reach Defendant's ineffective assistance of counsel claim.